Khan v. United States Ms. Smith, whenever everyone is settled, you may begin. The decision below was erroneous in several respects, but I think the cleanest, most straightforward way for the court to resolve this case is to say that the district court erred in concluding that the FBI special agents were the legal cause of the plaintiff's prosecution. Under Florida law, a person is only the legal cause of a prosecution if he made the decision to prosecute or if he improperly influenced the prosecutor's decision, for example, by lying to the prosecutor, withholding evidence, or fabricating evidence. But here, again, this is a malicious prosecution case, and there's a lot of cases under Florida law and even in this circuit where once you have an intervening cause, i.e., the grand jury, the prosecutor, I mean, this is a terrorism case, and this is not a case where you just go to the eighth floor and the first signs off on the indictment that's going to be presented to the grand jury. This is a case that goes up and down, DOJ, main justice, and people sign off on this. And then it got presented to the grand jury, and the grand jury returned a true bill, an indictment. Absolutely, Your Honor. Here, the unrebutted evidence at trial was that the FBI special agents presented all of the evidence that they gathered to the prosecutor, and the prosecutor made an independent decision that there was probable cause and, you know, move forward with charges. And the prosecutor's- So then isn't it the agents, the evidence that the agents presented, then isn't that the basis upon which the prosecution decided to proceed? And in terms of the standard, yes, de novo for the legal conclusions, but in terms of the basis for the indictment and the district court's findings, those are subject to clear error. So, the question of the legal causation here, you know, we are not challenging any of the district court's factual findings as to the causation? So you agree that, with respect, for example, the money to one of the individuals who Mr. Khan said was a relative of his wife, there was no investigation by the agents to verify his identity. And so that information was presented to the grand jury as if he really was a Taliban-affiliated person as opposed to a family member. Your Honor, I want to make sure that we're clear about the two issues that's before the  The first is legal causation, and then the second is probable cause. So for the first, the legal causation, the question here is whether the special agents made the decision to prosecute or whether they improperly influenced the prosecutor. I understand that, and I'm focused on the second part of that.  No, the influence, the prosecution. I thought that's how you divided it, right? Right. So for plaintiff to show that the special agents were the legal cause of the prosecution, one way he could do that would be to show improper influence on the prosecutor's decision to prosecute. That's true. But the evidence here is that the prosecutors had all of the evidence that the agents had and that they made the independent decision that there was enough for probable cause. Okay, so that's the connection I'm trying to understand. The prosecution had all of the evidence that the agents presented and relied on that. So then don't we have to look at the veracity, completeness, et cetera, of the evidence that the agents presented to the prosecutors? So a few points there, and I want to make sure I circle back to the claims about the Akbar Hussain evidence. So if the prosecutors know all the evidence that the agents had, even if the evidence was maybe incomplete or they could have done a better job- Or fabricated. Well, fabricated is different because what that means is that if the prosecutor doesn't know it's fabricated, then they've lied to the prosecutor. And so- There's no evidence here that there was any fabrication or that there was, I mean, there's cases and there's case law where there's agents withheld exculpatory evidence from the prosecutors. That's different. Like if you can have an agent who doesn't turn over a 302 report or doesn't include things in the 302 report or misrepresents things in the 302 report, obviously that's a very different situation and that is not the case here. No one misled or misrepresented anything in terms of, it was a poorly done investigation, but that doesn't necessarily mean as a matter of law that they were the legal cause of the ultimate prosecution. That's right, Your Honor. And the district court here expressly found in her damages opinion that the special agents did not fabricate evidence. Okay, so fabrication perhaps is too strong, but I do appreciate Judge Lagoa's use of the word misrepresentation. So you have someone who is presented to the grand jury as being a member of the Taliban, but it turns out he's actually just a family relative. The failure to do that thorough investigation coupled with the presentation of the person that's Taliban is at least, how is that not misleading in any way in a misrepresentation that could have been corrected through a more thorough investigation? Okay, so again, the question is whether the agents misled the prosecutors, not whether he misled the grand jury because it's the prosecutors that caused the prosecution by initiating it. I understand that, but it was bad evidence that was presented to the grand jury. So I mean, I see the distinction you're making, but I don't think that nuance applies wholly here. So that's what I would just want you to help me fully understand. I'm clear on the legal standard, now we're on the application part. Okay, I'll do my best, Judge Abudu. So here, if the prosecutor had all of the evidence that the government had, and maybe it wasn't enough, maybe the prosecutor shouldn't have brought charges, the prosecutor's decision still insulates any wrongdoing by the law enforcement officer because that prosecutor had all of the information that the law enforcement officer had and made that decision to prosecute. I mean, there's not a single prosecutor who is going to bring a, is going to go and present to a grand jury only because an agent has told them to do so. No, they're going to look at that evidence and make sure that there is probable cause. That's their responsibility before they bring charges. And here, you know, Judge Abudu, just to respond directly to your concerns about the Akbar Hussein evidence, there's a few things I want to say about that. One is that the allegation that this was a relative of plaintiff's wife, that was brought to the investigator's attention after the indictment. So it doesn't undermine the probable cause they had at the time proceedings were initiated. It also doesn't undermine all the other probable cause evidence that the government had. There were several transactions that the government reasonably believed were destined for the Pakistani Taliban and there was, um, that plaintiff had been involved in those transactions. So even if, okay, the district court disagreed, I think those are factual findings, correct? The district court didn't consider other evidence that the, that was known to the agents at the time. So the government, the district court made a legal error in this probable cause analysis by not considering all of the facts known to the agents at the time that it initiated the prosecution. Mr. Khan had a, um, he was interviewed prior to being, uh, arrested and he didn't clarify or who Mr, who the individual was that the monies were being wired to. He was not interviewed until after he was arrested, after he was indicted. But it is true that at the time of his arrest, he said several things about Akbar Hussein. He said he didn't know who Akbar Hussein was. He said he didn't remember sending money to Akbar Hussein. He said maybe Akbar Hussein was his wife's relative who lived in London. And then he also said it might've been his wife's uncle who lived in Pakistan. And I would direct the court to dock it for 11 pages, 142 to 145 is special agent Jansen's testimony about the post arrest interview. Um, but that's all to say that the agents had, you know, they doubted his story that this was a Pakistani relative because he had said other things that were inconsistent with that, that story. At a minimum, it was not obvious information that would have been uncovered had anyone merely cared to do so, right? That's absolutely true. And as we discussed in our brief, the government also couldn't investigate the Pakistani identification number associated with, um, Akbar Hussein before the indictment without jeopardizing their investigation. And so that was another reason why that information was just not available to prosecute or I'm investigating officers when they, um, initiated the investigation. Do you think that in this case, the prosecutors, that there's any evidence of the prosecutors relied on the agents any more than prosecutors do in any other ordinary case? I don't, your honor, the unrebutted evidence at trial was that the U S attorney's office and the FBI agents work closely. They worked early on in the investigation. The FBI shared its evidence with those agents, or I'm sorry, with the attorneys, the attorneys would sometimes direct the agents, you know, we need more evidence about this or that. Can you go out and gather it? Because this is, this is, this is a case that's not a reactive case. This is not a case where someone is being picked up at the airport with drugs. This is a case that's an investigation case where the prosecutors are working with the agents in terms of, uh, listening to the calls that are coming in, uh, in order to see whether or not there's other individuals that need to be, um, uh, part of the focus of the investigation. And so this is an ongoing investigation and the attorneys are also involved. That's correct. Your honor. But it's also a case in which someone spent almost about 317 days in jail, part of it in solitary confinement only to be released and then have the case, the claims or case dropped. That's right. And then the, and a case in which the district court made findings under clear air review, finding that the information that the agents provided was not thorough and ultimately did not support the indictment or at least continue prosecution. That's correct as well. Right? I disagree, your honor. So I think you had two questions there and I want to make sure I get to both of them. So the first is I would really encourage the court not to draw a negative inference from the fact that the government later dropped charges. There's a difference between the probable cause the government needs to initiate a proceeding and proof beyond a reasonable doubt that the government needs to prevail at trial. And I think the government here did the right thing in that when it had probable cause that a serious crime was being committed, it investigated that. But when it determined, made the determination that it couldn't prevail at trial, it dropped charges. That's what we want the government to do. And this court shouldn't issue a decision that would create incentives for the government to keep fighting charges that really it should drop. I want to let you answer her second question, but I want to make sure I understand something about the record. Is the record explicit that that's why the government dropped the charges or is it silent? It's not. So there could be a lot of reasons in a terrorism related case that the government would drop charges, right? That's correct, Your Honor. And plaintiff's assertion is that the government dropped the charges because of the Akbar Hussein evidence. That's not been the government's position. What the government explained at trial, and you can find this in the district court's discussion of the bona fide termination, is that there were changes made to some of the translations as the government's getting ready for trial. And there's some subtle changes in the translation is what precipitated the government to drop charges. Judge Abudu, if I could just answer your second question about the factual findings. What the district court found was that there was not probable cause based on the overt acts that were presented to the grand jury. That was incorrect legal analysis because it didn't consider all of the facts that the government had at the time. And so whether there's probable cause is a legal determination, and this court can make that based on, can make that legal determination based on the record before it without deferring to the judgment of the district court. Didn't Judge Jordan, when he was on the district court, agree that the, at the detention hearing, that the evidence that the government has proffered against Mr. Khan, though not as strong as the evidence of his father, is substantial in ways in favor of detention? I believe that's correct, Your Honor. Thank you. Mr. Luck. May it please the court, Your Honors, David Luck on behalf of Irfan Khan. So I want to start initially with the standard of review, and it's being lost from the argument by the government and also some of the questions from the court that the standard review on fact-finding, and I know my friend on the other side says they're not challenging the fact-finding. There is no way that that is true because they are completely ignoring significant fact-finding by Chief Judge Altanaga here. But still, you're still here on, as a matter of law, whether or not there was a proper claim for malicious prosecution. And you still have to have, if there's an intervening cause under Florida law, then you don't have, you don't state a claim for malicious prosecution. So I disagree that there's an intervening cause, and as one example, I would refer Your Honor to a case- I understand that you don't agree with that, but you do agree that an intervening cause, if there is an intervening cause, then there is no claim for malicious prosecution. If there's truly an intervening cause- It doesn't have, you know, malice or, you know, hiding the ball. Exactly. All of the facts, they keep saying there's unrebutted evidence that all of the facts were provided by S.A. Jansen and his team to the prosecutors here. That is not true. And that gets to the fact-finding. I understand Your Honor's point about the law, but I would point to Manuel v. City of Jolie, Illinois. And in that case, Justice Kagan, writing for the court, specifically said in footnote 8 with regard to the dissent's position that an intervening grand jury indictment somehow meant that there wasn't going to be a Section 1983 malicious prosecution claim if the evidence that is presented to the decision maker, whether it's a prosecutor or a grand jury or a magistrate or a judge who's making a probable cause determination, is tainted. There's no intervention. So tell me what false statements or material representations the FBI agent made to the  Absolutely. So one, Chief Judge Altanaga focused upon the fact that the investigating FBI agents were aware the entire time that their translation team had told them, for instance, with regard to one of the calls that this supposed Sharia people thing evidenced a conspiracy to support terrorism in Pakistan was bunk because a proper translation of that is providing money to pious people, to religious people. That's one example. In addition, Is there is there evidence that the the agents knew what you were saying, believed what you were saying and intentionally misled the prosecutors about that? I think you're maybe stating the evidence in a stronger way than it seems like the record reflects. I would disagree, Your Honor, because Chief Judge Altanaga specifically found that there were misrepresentations made by these agents. She also found that their testimony before the grand jury was the same information that they were reporting to the prosecutors in this case. And she found that it was full of misrepresentations and that it had omitted critical facts. But how do you deal with the fact that in the grand jury it was the prosecutors who wrote the script? It was not the prosecutors who wrote the script. In fact, the PowerPoint presentation that was used here over. That's the evidence that I read. I mean, maybe I misread the evidence, but please don't don't misrepresent, because if I look in the evidence and that's not true, what you're saying to me, we're going to have an issue. So, Your Honor, I one I I'm a little bit shocked I'm being accused of misrepresenting something. There's a PowerPoint presentation here, and the testimony was that that PowerPoint presentation was used. And this came from retired Special Agent Waldron, who confirmed the use of the PowerPoint presentation by S.A. Jansen. S.A. Jansen testified the grand jury script was prepared by the U.S. Attorney's Office. I really had very little input into it. I did a fact check. I did fact check it. Right. And I'm making a different point. There was additional testimony. Well, then you didn't listen to my question. My question was about the grand jury script. The grand jury script, when the FBI agents testified, that was a script that was written by the prosecutors. That was his testimony. But what my point is, is there's contrary evidence in the record. You don't simply accept whatever he said at face value. And in fact, Chief Judge Altanaga denied his credibility. She said she found that he was not credible. And what I'm pointing to is that there was a PowerPoint presentation, specifically Record 360-53. And the testimony from Agent Waldron, who worked on this team with S.A. Jansen, was that that PowerPoint presentation was used over and over again throughout this process by Agent Jansen to educate the prosecutors regarding the evidence at issue here. That's the point that I'm trying to make. And in addition to that, opposing counsel continuously says, there's unrebutted evidence that all of the facts and everything was communicated 100 percent between. There's testimony also, is there not, that it was the prosecutors who decided what to  Correct. But the law is, prosecutors always are the ones who ultimately make the decision to charge. But the law enforcement proviso, which is part of the FTCA, the case law is replete over and over and over again. If you are a prosecutor and you are receiving information from your investigating police or from your investigating FBI agents that is incomplete, it doesn't simply have to be fabricated. If it's materially incomplete, if evidence has been omitted, if evidence has been withheld, which are all of the things that Chief Judge Altanaga found here. She found that there was evidence that was withheld regarding translators. She found that there was evidence withheld with regard to the fact that they talk about the 302, the first 302, and that somehow it wasn't communicated that our client, Mr. Khan, had informed them that Akbar Hussein was a family relative. That's false. Chief Judge Altanaga found in his first 302 that he revealed that. She also found that she had, he had business cards on his person with regard to Akbar Hussein. This information. That was related to the prosecutors. However, Your Honor, you're also discounting the fact that that's simply testimony from Agent Zanson, who Chief Judge Altanaga found to lack credibility. And then this is important. This is not mentioned by my opponent. There was a negative inference that was drawn here. And that business card was, when that business card was found, that was found on your client in London. I don't know if it was London, but it was found on him when he was picked up, correct? He was never in, he was not in London. I understand that in London, but the, but the business card was found on his person. Business card was on his person. And that information was relayed to the prosecutors. According to S.A. Janssen, however, and I just really have to make this point. There was a negative inference that was drawn here. I understand your, your position, Your Honor, but you're not accounting for this and my opposing counsel. I don't take positions, counsel. I do not take positions. I'm asking questions. Your perspective. I will rephrase. There is a negative inference that was drawn here with regard to the fact we only have one side of this conversation. Before trial, Chief Judge Altanaga specifically pointed out, there was a declaration provided by AUSA Shrivasti Sundaram, and I apologize if I'm mispronouncing that. And in that declaration, she specified that all information was accurately relayed. And then Chief Judge Altanaga, in her findings of fact and conclusions of law, which are subject to review for clear error, specifically says, curiously, despite the fact that the government is contending that all facts were accurately conveyed, that prosecutor never testified. And that ties into the main case that the... Let's talk about the fact that, because you say that it all goes to this agent. But funnily enough, there's an email that went to AUSA Shipley. Shiva, Janet found the attached business card and inference stuff. The front of the card is for the Bangnora branch of Muslim Commercial Bank, and the bank of the card has Akbar Hussein written on it with two numbers that appear to be associated with the UK. So, in fact, that was relayed to AUSA Shipley because it's in an email. The evidence is that the FBI agents never followed up on that, never investigated. Right. Do you... Are the FBI agents obligated before seeking an indictment to fully investigate a case so that it could be presented to a jury and proven beyond a reasonable doubt? Not beyond a reasonable doubt, but that goes to the element of probable cause and also the element of legal cause under Florida law for malicious prosecution. As Chief Judge Altanaga correctly reasoned in her conclusions of law, there is a case called, for example, Harris v. Lewis State Bank and also Altera Healthcare v. Campbell. The first case is a First District Court of Appeal decision from 1986. The second case is a Second District Court of Appeal decision from 2011. And in both of those cases, they explain that where there are easily verifiable follow-up inquiries that can be made and the investigators do not do so, or if information has been withheld and it's not followed up on, that is evidence of lack of probable cause. So far, it seems that you've said right now that the information was withheld about this business card. And Judge Lagoa just read you an email relaying the information. So it's not just... If there were a specific finding that that information were withheld, I would think that under even the clear error standard, an email communicating that information would show that that conclusion was clear error. Would it not? It would be, but there are additional things that were withheld. I'm going to go through this. This is specifically at pages 31 through approximately 38 of our answer brief. So Chief Judge Altanaga relayed that within days of the FBI finally checking Akbar Hussain's Pakistani ID number, that Agent Janssen also obtained a secret grand jury subpoena to finally check the travel records for Mrs. Khan. And the defendant did not disclose portions of this information until the middle of the trial before Judge Altanaga... That was after the indictment, right? Right. But what we're also looking at here is there's an alternative basis to affirm. There is both, as pled by us in our complaint, there is malicious prosecution for the initiation of the prosecution and also for the continuation. Yes, I'm aware you're mixing them up. We were talking about initiation before. So are you now talking about continuation? That aspect from her findings of fact is with regard potentially to both because she holds that it's information that would have been available to them at the time that they were presenting their case to the prosecution and it would have been information that they could have gathered the entire time it would have been available and was ultimately available to them at the time when the decision was made to continue the prosecution. In addition, Chief Judge Altanaga goes through every single overt act. She also points out that there was no information ever in any of the calls. She says any of the calls. This is information that was available. There was no information in any of the calls ever that our client agreed to send any money to any member of the Taliban, agreed to any attack, agreed to support terrorism whatsoever, and S.A. Jansen ultimately admitted on the stand during his examination, adverse direct examination by us, he ultimately agreed that that was the case. Do we have anything in the record to explain why so quickly after detaining Mr. Khan for almost a year, the government then quickly dismissed the case and whether or not we have that information, why or why isn't it relevant? We do have that, Your Honor. So there was a bond denial appeal that was before this court, and it was only at that point, once the bond denial was up on appeal, that the record reveals that the government actually began looking into whether they were completely wrong about this easily verifiable information regarding Akbar Hussein. His birthdate, his Pakistani ID number was on the Western Union transfers the entire time, and that was the first time they also, from the very first 302 interview, Mr. Khan was telling them, my wife was traveling in Pakistan for a family wedding at the relevant time in the spring of 2008. They didn't check any of her travel records. They didn't look at her passport. They inquired as to none of that information. And all of that could have happened before the indictment. All of that, absolutely, as Chief Judge Altanaga found, could have happened beforehand. Now, I understand that there's this perception that a prosecutor would never do something that was inappropriate, except we're not talking about... Let me be clear. That is not what anyone is suggesting, that we are not suggesting that a prosecutor would never do anything inappropriate. Okay, well, that seemed to be the sentiment that I heard, but accepting that, I'll change tack. So that it's clear, what my question was, is that prosecutors do not go present to a grand jury something that they do not, that they're being told to do by an agent, because no prosecutor is going to do what an agent wants them to do. Except we have here Agent Waldron's testimony, specifically at pages 78 through 84 of Record 416, where she explains that the prosecutors here were educated by S.A. Jansen's PowerPoint. So if that PowerPoint omitted important facts, as Chief Judge Altanaga found that it did, and if the relevant information was not, in fact... This was a clearly, I mean, I've read a lot of the emails, counsel, okay? So I've read a lot of the emails where AUSA Shipley was receiving information in real time and saying, okay, well, you know, Mr. Kahn lied before. He said he was sending money to the wife, but in fact, he was sending money instead to Mr. Kahn, to the individual, the other individual. So I mean, there was a lot of back and forth going on. So it wasn't necessarily that the prosecutors were just hiding their head in the sand and not following up on investigations. And then when we asked to conduct discoveries specifically regarding what was disclosed between the FBI agents and the prosecutors, we were stonewalled with assertion of privilege after assertion of privilege after assertion of privilege. And then as Chief Judge Altanaga found, and I don't hear them disputing the fact findings which are reviewed for clear error, they told her, this AUSA is going to come to trial. She's going to provide that all of this information was provided. She's going to detail what was provided. She's going to show that nothing was omitted, that nothing was improperly misled, that nothing was emphasized that shouldn't have been emphasized. And lo and behold, what happened at trial, they didn't call her. And Chief Judge Altanaga expressly said, curiously, and then drew a negative inference with regard to that. Opposing counsel says they don't challenge any of the fact findings. I would respectfully request that your honors read the detailed fact findings by Chief Judge Altanaga. And the standard review says, even if your honors disagree with those fact findings, unless they are clearly erroneous and have no support in the record, then you have to defer to that fact finding. And under that fact finding, there is no way to say that there is unrebutted evidence that this S.A. Jansen and his team accurately disclosed everything to the prosecutors. Thank you, your honors. For all these reasons and those stated in our answer brief, we would respectfully request that you affirm Chief Judge Altanaga's liability findings and damages findings. Thank you. Ms. Smith, you have reserved time for rebuttal. Thank you, your honor. I have a question, and maybe it's really a question perhaps for a limiting principle. Because it does sound, there's no question. Prosecutors are independent from FBI or other law enforcement. We know that. We also know that prosecutors, especially in this case, rely on the information from those agents. So what would be the limiting principle then to say, for purposes of malicious prosecution, that any time a prosecutor relies on the information of an agent, but then makes the decision within its authority to move forward with an indictment, that that somehow is an intervening cause? I would refer the court to the Harris versus Lewis State Bank decision, where the Florida Court of Appeals said that where a person makes a full and accurate disclosure, and the prosecutor makes an independent decision, that that person can't be held liable. And so we don't disagree that there might be cases, not this one, but other cases where investigators lie to the prosecutor or they withhold evidence. And there, the problem is that the prosecutor doesn't get to make an independent decision about prosecution. And so their officer could be held liable. But here, I think all the facts show is that the agents gathered the evidence and they gave it to the prosecutors. And that's the problem. How the agents gathered the information, the thoroughness of their investigation, upon which I think it's not disputed, the prosecution perhaps reasonably relied. That's why we're focused on the agent's conduct, correct? Absolutely. Go ahead. Answer Judge Abudu's question, please. Well, I was just going to say, Your Honor. So if we disagree that the evidence here was insufficient to support probable cause, but if there was a case where the evidence was just really weak and the investigators did a terrible job, but they gave all that to the prosecutor, and the prosecutor saw that weak evidence, but said, oh, here's enough. I'm going to go present this to the grand jury. And Chief Judge Altanaga disagreed. And her findings are pretty thorough. And again, they're entitled to deference unless we can say without any hesitation that they were clearly wrong. So again, I'm just not seeing how this equation equals reversal. So Your Honor, the district court made no findings that the agents withheld evidence. And I take Your Honor's question or point to be that maybe the district court found that the investigation was not thorough enough. But if that's the case, then the prosecutor made an independent decision that it was thorough enough and brought charges. And that independent decision insulates the officers from liability as a matter of law. Is it true in your view that the district court's decision was thorough? I mean, to me, having reviewed the record carefully, it seems like significant facts were omitted, including that Irfan's father described him as being with the mujahideen, that Irfan advised Hafeez on the appropriate recipient of suspicious funds, and that Irfan and Hazim had discussed over the phone sending the money to the Sharia people, that the proper meaning of that translation is disputed, but that the FBI agents testified that they understood at the time that it meant that people who wanted, that it qualified as people who wanted to establish Sharia law. I mean, on and on and on, there were a wide range of pieces of evidence that the district court opinion doesn't address at all.  Absolutely, Your Honor. The district court here only considered the overt acts that were presented to the grand jury, didn't consider in its probable cause analysis all the other evidence that Your Honor mentioned. And as we explained in our brief, probable cause looks at whether the defendant had a reason to believe, based on all the facts known at the time, that a crime had likely been committed. And here the, I mean, it's undisputed that the prosecutors were the ones that determined what the charges were that were going to be brought. That's correct, and determined which overt acts to present to the grand jury. If there are no further questions, we ask that the judgment below be reversed. Thank you. We will take a brief break. We'll see everyone back here at 1045. Thank you. All right.